UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

YVONNE LANGFORD and NITAYA MCGEE, on behalf of themselves and all others similarly situated,

Plaintiff,

v.

Case No. 5:25-cv-05228-TLB

WALMART INC.

JURY TRIAL DEMANDED

Defendant.

**COMPLAINT – CLASS ACTION**

Plaintiffs Yvonne Langford and Nitaya McGee ("Plaintiffs"), by and through their attorneys, makes the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Walmart, Inc. ("Defendant").

**NATURE OF ACTION**

1. This is a class action lawsuit on behalf of purchasers of Defendant's Mainstays Disposable Aluminum Pans (the "Products[1]") in the United States.

2. Defendant Walmart, Inc. labels, advertises, markets and sells disposable 100% aluminum pans (also known as "foilware") under its "Mainstays" label. Walmart, Inc. sells the Products throughout the United States, including in the States of Illinois and California.

3. Defendant advertises, markets, and sells the Products as products that are "Made

[1]The Products include all disposable aluminum pans sold by Defendant that is labeled, packaged, or marketed with claims that the products are "Made in the USA."

in the USA" (the "USA Representations"), along with a logo designed to imitate the flag of the United States of America:









4. Problematically for consumers, the USA Representations are false and misleading because all, or virtually all of the aluminum and bauxite used to make the Products is obtained outside of the United States, and all of the transformation of bauxite into alumina and the transformation of alumina into aluminum occurred outside the United States.

5. Plaintiffs bring this action individually, and on behalf of all similarly situated individuals who purchased the falsely and deceptively labeled Products for violations of the Illinois Consumer Fraud Act, §§ 815 ILCS 5051/1, *et seq.*, California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, California's False Advertising Act ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, breach of express warranty, unjust enrichment, and fraud.

## PARTIES

6. Plaintiff Yvonne Langford is a citizen and resident of Peoria, Illinois who has an intent to remain there, and is therefore a domiciliary of Illinois. In September 2025, Plaintiff purchased packs of loaf pans and roasting pans from Walmart in Peoria, Illinois. Prior to her purchase of the Products, Plaintiff reviewed the product's labeling and packaging and saw that her Products were labeled and marketed as being "Made in the USA." In purchasing the Product, Plaintiff relied on Defendant's representations that the Products were "Made in the USA." Plaintiff saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Products were "Made in the USA" and that all, or virtually all, of the components in the Products were sourced from the USA. Plaintiff relied on these representations and warranties in deciding to purchase her Products. Accordingly, those

representations and warranties were part of the basis of the bargain, in that she would not have purchased her Products on the same terms had she known those representations were not true. In making her purchase, Plaintiff paid a price premium for Products that were "Made in the USA." Had Plaintiff known that the "Made in the USA" claim was false and misleading, Plaintiff would not have purchased the Products, or would have paid substantially less for the Products.

7. Plaintiff Nitaya McGee is a citizen and resident of Riverside, California who has an intent to remain there, and is therefore a domiciliary of California. On May 16, 2025, Plaintiff purchased packs of Cake Pans and Half-Size Steam Pans from Walmart in Riverside, California. Prior to her purchase of the Products, Plaintiff reviewed the product's labeling and packaging and saw that her Products were labeled and marketed as being "Made in the USA." In purchasing the Products, Plaintiff relied on Defendant's representations that the Products were "Made in the USA." Plaintiff saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Products were "Made in the USA" and that all, or virtually all, of the components in the Products were sourced from the USA. Plaintiff relied on these representations and warranties in deciding to purchase her Products. Accordingly, those representations and warranties were part of the basis of the bargain, in that she would not have purchased her Products on the same terms had she known those representations were not true. In making her purchase, Plaintiff paid a price premium for Products that were "Made in the USA.". Had Plaintiff known that the "made in the USA" claims were false and misleading, Plaintiff would not have purchased the Products, or would have paid substantially less for the Products.

8. Plaintiff McGee remains interested in purchasing disposable pans that are truly "Made in the USA," and would consider purchasing the Products in the future if Defendant ensured the USA Representation was accurate and truthful. However, she cannot know for

certain whether the false labeling of the Products has been corrected. The composition of the Products may change over time, but Plaintiff will be unable to rely on the Products' USA Representation in the future as she will not be able to determine whether the Products' are truly "Made in the USA."

9. Defendant Walmart, Inc. is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Defendant markets, sells, and distributes the Products throughout the United States, including in the States of Illinois and California. Defendant sells the Products under its in-house brand, Mainstays. Defendant marketed and sold the Products during the class period.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because: (1) this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs; (2) there are over 100 members of the putative class; and (3) there is minimal diversity, because at least one class member is a citizen of a state different than Defendant and, because Plaintiffs are citizens of Illinois and California, while Defendant is a Delaware corporation with its principal place of business in Arkansas.

11. This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) and (d) because Defendant maintains its principal place of business in, and is thus a resident of, this State, maintains minimum contacts with the United States and this State and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in Arkansas.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

## FACTUAL ALLEGATIONS

### A. Defendant Misrepresents the Products are "Made in the USA"

13. Defendant falsely and misleadingly labels its Products, as being "Made in the USA."










14. Defendant is well aware that the USA Representations are material to an ordinary and reasonable consumer in deciding what products to purchase and deciding to pay more to purchase Defendant's products compared to similar products not nearing the USA Representation claims. The USA Representations on the Products' packaging, labeling, advertising, and

marketing are conspicuous and designed to grab the consumer's attention using versions of the United States flag to drive home the origin claims. The Products prominently make the USA Representations on the front label and packaging of the Products.

15. In this way, Defendant's carefully designed its labels, advertising, packaging, and products, including the placement of the USA Representation, to perpetuate the false notion that the Products are in fact "Made in the USA." Defendant intends that ordinary and reasonable consumers viewing the Products will read the claim, understand the claim, and rely on the claim to make purchasing decisions.

**B. "Made in USA" Labeling**

16. Traditionally, the Federal Trade Commission ("FTC") has required that products marketed and advertised as "Made in the USA" be "all or virtually all" made in the United States.

17. In 1996, the FTC published its Enforcement Policy Statement on U.S. Origin Claims to guide marketers that wanted to make an unqualified "Made in the USA" claim under the "all or virtually all" standard as well as those who wanted to make a qualified "Made in the USA claim."

18. In 2021, the FTC formally enacted the rule on Made in USA Labeling (the "Labeling Rule"). Under 16 C.F.R. § 323, "Made in the United States" means:

> any representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.

16 C.F.R. § 323(a).

19. Per the FTC, examples of express "Made in USA" claims include, but are not limited to, "Made in USA," "Our products are American-made," "USA," "Manufactured in USA," or "Built in USA."

20. Examples of implied claims include, but are not limited to, US. Symbols or geographic references like U.S. flags, U.S. maps, or references to U.S. locations of headquarters or factories.

21. The Labeling Rule codified the "all or virtually all" standard for "Made in USA" claims on products:

> it is an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2.

22. The FTC has also clarified that "all or virtually all" means that the product should contain no – or negligible – foreign content.

23. The FTC has gone on to give examples of deceptive conduct arising from the foreign content in products with "Made in USA" claims, including but not limited to the following:

> **Example 1:** A company produces watches at a plant in Nevada using mostly U.S. parts and labor. All watches include movements, which are the parts that allow the watch to keep time. The company uses inexpensive Swiss movements in its watches. Movements account for a small proportion of the costs to make the company's watches, but without the movements, the watches can't tell time. Because movements are essential to the watches' function, an unqualified Made in USA claim is likely deceptive.

> **Example 2:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An unqualified Made in USA claim is deceptive for two reasons: The base is not far enough removed in the manufacturing process from the finished product to be of little consequence and it's a significant part of the final product.

24. Raw materials and components are also included in the "all or virtually all" analysis. The FTC has provided the following example to guide marketers:

> **Example 3**: If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article. By contrast, consider the plastic in the plastic case of a clock radio otherwise made in the U.S. of U.S.-made components. If the plastic case was made from imported petroleum, a Made in USA claim is likely to be appropriate because the petroleum is far enough removed from the finished product, and is an insignificant part of it as well.

**C. Reasonable Consumers are Misled by the USA Representations**

25. The USA Representations lead reasonable consumers, like Plaintiffs, into believing the Products are "Made in the USA." More, specifically, reasonable and ordinary consumers interpret the USA Representations to mean that all parts of a product, including any natural resources it contains, originated in the United States.

26. The USA Representations are material to ordinary and reasonable consumers. Indeed, in 2020 when the FTC conducted a workshop and called for public comment on Made in the USA labeling, one comment noted that Consumer Reports testing found that 80% of consumers prefer to buy American products. Similarly, another comment reported that 2018

testing found that 92% of survey respondents had a favorable view of manufactured goods in America.

27. But Defendant's USA Representations are false. Defendants' Products are manufactured by Handi-Foil Corporation ("Handi-Foil"). Handi-Foil specializes in making "foilware" products (i.e. disposable aluminum pans) like the Products at issue here. Photos of the aluminum foil coils Handi-Foil uses to manufacture the Products are below:



28. Handi-Foil sources the aluminum foil used in the Products internationally from suppliers in China, Turkey, Italy, Brazil, Portugal, India, Spain, and Greece. Attached as **Exhibits 1** and **2** are examples of import data for Handi-Foil, which demonstrates that Handi-Foil imported aluminum foil for the Products.

29. Defendant Walmart, Inc. has repeatedly been warned about the use of USA Representations on its Products. For example, on July 8, 2025, Walmart was warned by the FTC that products sold on its website by third-party sellers with USA Representations likely violated

the Labeling Rule. A true and correct copy of the FTC's July 8, 2025 letter is attached hereto as **Exhibit 3**.

30. Similarly, in 2015 writers for truthinadvertising.org ("TINA") investigated Defendant for false and deceptive Made in USA claims and notified Walmart that its website contained more than 200 Made in USA misrepresentations.

31. Defendant has also admitted the Products are not made with USA sourced materials. In late 2025, Defendant began to revise its online labeling and marketing. As of October 2025, Defendant had not revised labels and marketing for Products available in retail stores. The new online labeling and marketing features a qualified claim stating that the Products are "Made in the USA with Globally Sourced materials", as shown below:






32. The Products are made of 100% aluminum, accordingly, more than 10 percent of the Products wholesale value is necessarily derived from foreign-sourced aluminum.




33. The Products are created by taking large rolls of finished aluminum foil, cutting the foil into desired widths, and then pressing the aluminum into desired pan shape. Any excess foil is then trimmed off to neaten the edges of the pan.

34. Aluminum is a fundamental component of the Products because it is lighter, more versatile, and more reliable in cooking, baking, and storage. In particular, aluminum provides reliable heat conductivity for even cooking and is eco-friendly because it is recyclable.

35. That the aluminum is sourced internationally is no surprise because the raw material for aluminum is bauxite, the only commercial ore of aluminum.

36. The largest suppliers of bauxite for aluminum include Australia, Guinee, India, Brazil, and Jamaica.

37. In contrast, none of the bauxite mined in the U.S. has been used for aluminum since approximately 1981.

38. Indeed, in 2023, only a limited amount of bauxite was produced for non-metallurgical use in Alabama, Arkansas, and Georgia. U.S.-mined bauxite is used for abrasives, high-temperature refractory materials, and as a high-strength proppant for hydraulic fracturing of oils and gas wells.

39. Moreover, the Atlantic Alumina Company LLC ("Atalco") owns the last operating alumina refinery in the United States. While the refinery is located in Gramercy, Louisiana, the bauxite it refines is mined from Atalco mines located in Jamaica.

40. Given the foregoing, it is virtually impossible to source U.S.-mined bauxite and U.S.-made aluminum in the United States. As such, the aluminum used in Defendant's products necessarily must be sourced from foreign nations.

41. Without aluminum (and bauxite) sourced from outside the United States, it would be impossible to manufacture the Products, all of which are made of 100% aluminum. First, as described above, all – or virtually all – of the bauxite ore used to create aluminum is sourced from outside of the United States. Second, the aluminum in Defendant's Products is sourced internationally, as demonstrated by its own admissions and the import records of Handi-Foil, meaning that all, or virtually all, of the aluminum in the Products is sourced from outside the United States, rendering the USA Representations false and misleading.

**D. No Adequate Remedy at Law**

42. Plaintiff McGee and members of the California Subclass are entitled to equitable relief as no adequate remedy at law exists.

43. **Broader Statues of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. Thus, California Subclass Members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, California Subclass Members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty or fraud will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

44. **More Prompt, Certain, and Efficient.** Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

45. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the USA Representations, including the Products' label and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the USA Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and the California Subclass may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct; common law fraud claims require a showing of actual deception or reliance).

46. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and the California Subclass because Defendant continues to misrepresent the Products with the USA Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm – none of which can be achieved

through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of removing the USA Representations is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. An injunction requiring removal of the claim will prevent the ongoing deception and repeat purchases based thereon. It is also not available through a legal remedy (such as monetary damages). In addition, injunctive relief is necessary because, because discovery and Plaintiff's investigation has not yet completed. Moreover, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

47. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

48. **Procedural Posture – Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof,

to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ALLEGATIONS

49. **Class Definition**. Plaintiffs seek to represent a class defined as all persons in the United States who purchased Products with USA Representations within the applicable statute of limitations (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

50. **Subclass Definitions**.

a. **Multistate Breach of Express Warranty Subclass**. Plaintiff McGee also seeks to represent a subclass consisting of Class members who purchased Products with USA Representations in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming within the applicable statute of limitations.

b. **Illinois Subclass.** Plaintiff Langford also seeks to represent a subclass consisting of Class members who purchased Products with USA Representations in Illinois within the applicable statute of limitations.

c. **California Subclass.** Plaintiff McGee also seeks to represent a subclass consisting of Class members who purchased the Products with USA Representations in California within the applicable statute of limitations.

51. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

52. **Numerosity.** The members of the Class and Subclasses are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimates that there are thousands of members in the Class and Subclasses. Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

53. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

a. whether Defendant's labeling, marketing, and promotion of the Products is false and misleading;

b. whether Defendant's conduct was unfair and/or deceptive; and

c. whether Plaintiffs and the Classes have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

54. With respect to the Illinois Subclass, additional question of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the Illinois Consumer Fraud Act, §§ 815 ILCS 5051/1, *et seq.*

55. With respect to the California, additional question of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the CLRA, FAL, and UCL.

56. **Typicality**. The claims of the named Plaintiffs are typical of the claims of other members of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

57. **Adequacy of Representation**. Plaintiffs are adequate representatives of the Class and Subclasses because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

58. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and

comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumer Legal Remedies Act
### Cal. Bus. & Prof. Code § 1750, *et seq.*
### (On Behalf of the California Subclass)

59. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

60. Plaintiff McGee brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

61. Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

62. Plaintiff, Class Members, and Defendant have engaged in "transactions" as that term is defined by California Civil Code § 1761(e).

63. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

64. As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other Class Members that the Products are "Made in the USA" when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

65. As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(4), (a)(5), (a)(7), and (a)(9).

66. Defendant's USA Representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

67. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

68. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

69. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

70. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (1) they would not have purchased the Products if they had known that the Products were not "Made in the USA"; and (2) they overpaid for the Products because the products are sold at a price premium due to Defendant's misrepresentations.

71. Accordingly, Plaintiff McGee, on behalf of herself and all other members of the California Subclass, seeks to enjoin the unlawful acts and practices described herein.

72. On October 2, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent, via certified mail with return receipt requested. This letter provided notice of Defendant's violation of the CLRA, for Plaintiff McGee and the class, and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of the California Subclass)**

73. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

74. Plaintiff McGee brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

75. Defendant's acts and practices, as described above, have deceived and are likely to continue to deceive Class Members and the public. As described throughout this Complaint, Defendant misrepresented the Products as being "Made in the USA." By its actions, Defendant disseminated uniform advertising regarding the Products to and across California and the United States. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code §§ 17500, *et seq.* Such advertisements were intended to – and likely did – deceive the consuming public.

76. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant represented that the Products are "Made in the USA" when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

77. Defendant, nonetheless, continues to represent otherwise to consumers.

78. In making and disseminating these statements, Defendant knew, or reasonably should have known, that its advertisements were untrue and misleading in violation of California

law. Plaintiff McGee and the California Subclass based their purchasing decision on Defendant's USA Representations. Plaintiff and the California Subclass were injured in fact and lost money as a result.

79. The misrepresentations by Defendant about the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*

80. As a result of Defendant's wrongful conduct, Plaintiff and the Class Members lost money in an amount to be proven at trial. Plaintiff and the Class Members are therefore entitled to restitution as appropriate for this cause of action.

81. Plaintiff McGee seeks all available relief under the FAL.

**COUNT III**
**Violation of California's Unfair Competition Act**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Subclass)**

82. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83. Plaintiff McGee brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

84. California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." For the reasons discussed above, Defendant has engaged unlawful, unfair, and fraudulent business acts or practices in violation of California Business and Professions Code § 17200.

85. Defendant has violated the UCL by engaging in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(4), (a)(5), (a)(7), and (a)(9), by violating California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, and by violating

the common law by, inter alia, making false representations and warranties concerning the Products and retaining the unlawfully obtained benefit therefrom. Plaintiff reserves the right to allege additional violations of law which constitute other unlawful business acts or practices.

86. Defendant has also violated the UCL's prohibition on unfair business practices because its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

87. There were reasonably available alternatives to further Defendant's legitimate business interest other than by engaging in the conduct described above.

88. Defendant has further violated the UCL's prohibition on fraudulent business practices by making knowingly, or that which Defendant reasonably should know, false and misleading representations and warranties about its Products which were likely to deceive the consuming public within the meaning of Bus. & Prof. Code § 17200.

89. Plaintiff and the California Subclass suffered a substantial injury by virtue of buying Products they would not have purchased absent Defendant's unlawful, unfair, and fraudulent marketing and advertising about the capability of its Products.

90. There is no benefit to consumers or competition from marketing claiming that the Products was "Made in the USA," when they are not.

91. Plaintiff and the California Subclass had no way of reasonably knowing that the Products they purchased was not marketed, packaged, or labeled accurately. Thus, they could not have reasonably avoided the injury each of them suffered.

92. The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal

alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the California Subclass.

93. Plaintiff seeks all available relief under the UCL.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the Class and Subclasses)**

94. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

95. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

96. As the marketer, distributor, and/or seller of the Product, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were "Made in the USA."

97. Defendant's representations were part of the description of the Products and the bargain upon which the Products were offered for sale and purchased by Plaintiffs and Class Members who reasonably relied on those representations.

98. In fact, the Products do not conform to the above-referenced representation because, as alleged in detail above, all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum. Thus, the warranty was breached.

99. On September 30, 2025 and October 2, 2025, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant warranty notice letters that complied in all respects with

U.C.C. 2-607. The letters provided notice of breach of express warranty. The letters were sent via certified mail with return receipt to Defendant advising Defendant that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letters stated that they were sent on behalf of Plaintiffs and all other similarly situated purchasers.

100. As a direct and proximate results of Defendant's breach, Plaintiffs and Class Members were injured because they: (1) paid money for Products that were not as Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false USA Representations alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for them.

101. Plaintiffs seek all available relief under this cause of action.

## COUNT V
**Unjust Enrichment**
**(On Behalf of the California Subclass)**

102. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

103. Plaintiff McGee brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

104. To the extent required by law, Plaintiff alternatively styles this cause of action as a quasi-contract claim seeking restitution.

105. Plaintiff and the California Subclass conferred benefits on Defendant by purchasing the Products.

106. Defendant has been unjustly enriched in retaining the revenues derived from the California Subclasses' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable because Defendant warranted that the Products were "Made in the USA" all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Products takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum. Defendant's misrepresentations caused injuries to Plaintiff and the California Subclass because they would not have purchased the Products if the true facts were known.

107. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the California Subclass is unjust and inequitable, Defendant must pay restitution to Plaintiff and the California Subclass for its unjust enrichment, as ordered by the Court.

108. Plaintiff and the California Subclass have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct. They lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**COUNT VI**
**Fraud**
**(On Behalf of the Class and California and Illinois Subclasses)**

109. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

110. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California and Illinois Subclasses against Defendant.

111. As discussed above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were "Made in the USA."

112. These misrepresentations were made with knowledge of their falsehood.

113. The misrepresentations made by Defendant, upon which Plaintiffs and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class and Subclass members to purchase the Product.

114. The fraudulent actions of Defendant caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VII**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, §§ 815 ILCS 505/1, *et seq.***
**(On Behalf of the Illinois Subclasses)**

115. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

116. Plaintiff Langford brings this claim individually and on behalf of the members of the proposed Illinois Subclasses against Defendant.

117. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

118. Defendant intended that Plaintiff Langford and each of the other members of the Illinois Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

119. As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff Langford and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

120. In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a. Certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Multistate Express Warranty Subclass, Plaintiff Langford as representative of the Illinois Subclass, and Plaintiff McGee as representative of the California Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b. Declaring that Defendant's conduct violates the statutes referenced herein;

c. Finding in favor of Plaintiffs, the Class, and the Subclasses against Defendant on all counts asserted herein;

d. Awarding Plaintiffs and Class and Subclass members their costs and expenses incurred in the action, including reasonable attorneys' fees;

e. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

f. Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

g. Providing such further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 28(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

**SMITH KRIVOSHEY, PC**

Date: November 6, 2025

*/s/ Brittany S. Scott*
Brittany S. Scott

Brittany S. Scott
Smith Krivoshey, PC
28 Geary Street, Suite 650, No. 1507
San Francisco, CA 94108
Telephone: (415) 839-7077
Facsimile: (888) 410-0415
E-Mail: brittany@skclassactions.com

**CLRA Venue Declaration Pursuant To Cal. Civ. Code § 1780(d)**

I, Brittany S. Scott, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and I am admitted to the bar of this Court. I am a partner at Smith Krivoshey, PC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Cal. Civ. Code § 1780(d) in that Defendant maintains its principal place of business in this District.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed at Oakland, California this 6th day of November, 2025.

*/s/ Brittany S. Scott*
Brittany S. Scott